UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

JEAN MULHOLLAND,

        Plaintiff,

    v.                                            Case No. 07-02266-JWL

METROPOLITAN LIFE INSURANCE
COMPANY,

        Defendant.

_____

## MEMORANDUM AND ORDER

Plaintiff Jean Mulholland brought this action in Kansas state court against Metropolitan Life Insurance Company ("MetLife"), alleging breach of an insurance contract. The action was brought to recover on an insurance policy issued on the life of Ms. Mulholland's deceased husband, Mr. Frank A. Mulholland. MetLife removed the case to this federal court. (doc. # 1) The matters presently before the Court are Ms. Mulholland's and MetLife's Motions for Summary Judgment. (docs. # 17, 33) For the reasons stated herein, the Court denies both Motions.

## MATERIAL FACTS

Ms. Mulholland was the wife of Frank A. Mulholland, deceased. From January 1, 1995 to April 1, 2005, Mr. Mulholland was a Covered Person under a policy of Group Universal Life Insurance (the "Group Policy"). The policy lapsed on April 1, 2005, due to non-payment of the premium.

Marsh @WorkSolutions ("Marsh"), a service of Seabury & Smith, Inc. is the third party administrator for the Group Policy. By letter dated September 6, 2005, Marsh advised Mr. Mulholland that his Certificate for coverage under the Group Policy had lapsed effective April 1, 2005. This letter was on Marsh letterhead and stated that if he was interested in reinstating coverage, he should refer to the reinstatement provisions of his certificate, and he would have to provide his medical history, which would be forwarded to MetLife for review.

Mr. Mulholland submitted to Marsh an application for reinstatement, a Statement of Health form, and a medical authorization, all dated October 3, 2005. On the Statement of Health form Frank Mulholland checked "yes" to question 5b, which asked: "Have you ever been diagnosed, treated, tested or given medical advice by a physician or other health care provider for . . . high blood pressure, stroke, or circulatory disorder?" In the section of the form asking for full details for "Yes" answers, Frank Mulholland stated that he had been treated for high blood pressure since 1995, and he listed his physician and medications. On the same Statement of Health form, he checked "no" to both portions of question 5e, which asked: "Have you ever been diagnosed, treated, tested or given medical advice by a physician or other healthcare provider for... diabetes? Insulin treated?" Mr. Mulholland had been diagnosed with diabetes around 2004 and had been treated with Lantus insulin since October 2004.

By letter dated March 6, 2006, Marsh informed Frank Mulholland that his request for coverage had been approved by MetLife and that coverage would be effective April 1, 2006. The letter is not signed but both "Marsh @Worksolutions, Program Manager" and

"Metropolitan Life Insurance Company, Program Carrier" are typewritten after the body of the letter. By letter dated March 7, 2006, MetLife informed Mr. Mulholland that his application was declined because of a history of chronic renal insufficiency, hypertension, diabetes and left ventricular hypertrophy (cardiac).  By letter dated March 8, 2006, to Mr. Mulholland, Marsh enclosed Certificate No. 4743833, identifying the "Covered Person" as Frank A. Mulholland and the Specified Amount as $400,000, and stating an Effective Date of April 1, 2006.  This letter again contained both "Marsh @Worksolutions" and "Metropolitan Life Insurance Company" at the end of the body of the letter. Plaintiff and Mr. Mulholland submitted to Marsh a check in the amount of $516.30, dated March 14, 2006, and payable to Metropolitan Life Insurance Company, as the premium for Certificate No. 4743833.  The payment was deposited on March 30, 2006.

Mr. Mulholland died on May 28, 2006.  The death certificate for Mr. Mulholland, in section 27, Part I, listed the immediate cause of death as "atherosclerotic coronary vascular disease" and, in Part II, titled "Other Significant Conditions Contributing To Death But Not Resulting In The Underlying Cause Given in Part I" listed "diabetes." By affidavit, MetLife's employee stated that MetLife was unaware of Marsh's action in sending the letter and certificate, as well as retaining the premium, until after Mr. Mulholland's death.  That employee also states that Marsh retained the records of Mr. Mulholland prior to his death, while another employee stated that in MetLife's ordinary course of business, it regularly maintains records and files relating to applications for reinstatement of lapsed coverages, including those that relate to Mr. Mulholland.

Plaintiff Jean Mulholland submitted to MetLife a life insurance claim form dated June 18, 2006. By letter dated July 11, 2006, MetLife requested that Plaintiff provide medical records and hospitalization records for Mr. Mulholland within two years of May 28, 2006. By letter dated July 25, 2006, one of Plaintiff's attorneys forwarded copies of medical records for Frank A. Mulholland to MetLife.

In a letter dated September 7, 2006, MetLife informed Ms. Mulholland that her claim was being reviewed, and they expected to provide further information within thirty days. The next correspondence by MetLife was a letter dated April 25, 2007, in which MetLife notified Plaintiff that it denied her claim. With that letter, MetLife tendered a check in the amount of $516.30 as a return of the premium. The payor of the check was "MetLife" and it was signed by its Senior Vice President and Treasurer. Plaintiff refused to accept the check and returned it to MetLife.

To date, MetLife has refused to pay the coverage provided by the alleged insurance contract, and Plaintiff contends that the money is now due and owing.

## STANDARD

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir.

2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id.*

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon his or her pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## DISCUSSION

## I. Plaintiff's Motion for Summary Judgment

Plaintiff's first argument is that MetLife has waived its right to deny reinstatement of the life insurance policy. While Plaintiff frames this as a waiver argument, it also argues that Marsh was the apparent agent of MetLife and that MetLife should be bound by that policy. Specifically, Ms. Mulholland argues that approving the reinstatement application and issuing the certificate of coverage were within the apparent scope of Marsh's authority, and MetLife, as the principal, is bound by such actions. Furthermore, Plaintiff alleges that MetLife ratified Marsh's actions by retaining the premium, and, therefore, is bound by such actions.

The second argument is that MetLife waived the right to rescind the insurance policy based on Mr. Mulholland's misrepresentation in the Statement of Health form that he did not have diabetes and had never been treated with insulin. Plaintiff reasons that the March 7, 2006, letter from MetLife acknowledges that Mr. Mulholland had diabetes. After that acknowledgement Mr. Mulholland received the letter dated March 8, 2006 with the policy certificate, and the premium payment made payable to MetLife also was retained. Therefore, Defendant knew about the misrepresentation but still acted as if the policy was in effect. *See Moore v. Farm & Ranch Life Ins. Co.*, 211 Kan. 10, 505 P.2d 666 (Kan. 1973) ("Where a party desires to rescind a contract on the ground of fraud and misrepresentations, he must, upon discovery of the facts, at once or within a reasonable time announce his purpose and adhere to it. . . . If, after discovery or knowledge of facts which would entitle a party to a contract to rescind the contract, he treats the contract as

binding and leads the other party to believe that the contract is still in effect, he will have waived his right to rescind." (Citations and quotations omitted.)).

There are unresolved genuine issues of fact that permeate all of Plaintiff's theories for relief. Each argument turns on the relationship or the appearance of the relationship between Marsh and MetLife. Consequently, the Court finds that whether Marsh was acting within the scope of its apparent agency is an issue for the trier of fact. "[A]n apparent agent is one who, with or without authority, reasonably appears to third persons to be authorized to act as the agent of another. . . . [T]he apparent authority of an agent to bind the principal rests upon words or conduct of the principal which leads the third party dealing with the agent to reasonably believe the agent's authority is sufficient to cover the transaction in question." *Bucher & Willis Consulting Engineers, Planners and Architects v. Smith*, 7 Kan. App. 2d 467, 469, 643 P.2d 1156 (Kan. App. 1982) (citations and quotations omitted)). "[W]hether there is any competent evidence reasonably tending to prove such a[n agency] relationship is a question of law," *Brown v. Wichita State University*, 217 Kan. 279, 540 P.2d 66 (Kan. 1975), *vacated in part on other grounds by Brown v. Wichita State University*, 219 Kan. 2, 547 P.2d 1015 (Kan. 1976)), but "[g]enerally, whether an apparent agency relationship exists in a particular case presents a question of fact." *Lyming v. Farm and City Ins. Co.*, 106 P.3d 99 (Kan. App. 2005) (table opinion) (citing *Nat'l Football Scounting Inc. v. Continental Assur. Co.*, 931 F.2d 646 (10th Cir. 1991), *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 827 P.2d 24 (1992)). The Court finds there is competent evidence in the record that can prove such a relationship, including but not limited to MetLife's company name on letters sent

7

by MetLife, Marsh's issuance of certificates on behalf of MetLife, and Marsh's acceptance of checks made payable to MetLife. Because there is evidence that can reasonably tend to prove the apparent agency, the Court finds that whether an agency, including an apparent agency, existed is a question of fact.

The second unresolved factual issue relates to what MetLife knew and when. Particularly, as related to the waiver of the right to rescind based on the misrepresentation, MetLife claims that it did not know about the misrepresentations in the Statement of Health form until after Mr. Mulholland died. Plaintiff, however, points to the March 7, 2006, letter, which was sent by MetLife and predated the letter that accompanied the insurance certificate; it acknowledges Mr. Mulholland's diabetes condition. Plaintiff alleges that MetLife must have had the medical records, which included the diabetes diagnosis, that it claims it received only after Mr. Mulholland's death. Additionally, if Marsh is found to be MetLife's agent, Marsh's knowledge might be imputed to MetLife, and Marsh's waivers may bind MetLife. *See, e.g.*, *Rosenbaum v. Texas Energies, Inc.*, 241 Kan. 295, 736 P.2d 888 (Kan. 1987) ("The law of agency generally imputes the knowledge of the agent to the principal."); *American Cent. Ins. Co. v. McLanathan*, 11 Kan. 533, 1873 WL 678 (Kan. 1873) ("An agent of an insurance company, authorized to issue policies of insurance and consummate the contract, *binds his principal by . . . waiver* within the ordinary scope and limit of insurance business, which is not known by the assured to be outside the authority granted to the agent." (Emphasis added.)). The Court finds that the issue of MetLife's knowledge and whether MetLife waived its right to rescind the contract are issues of fact. *See, e.g.*, *Schneider*,

200 Kan. at 398 ("Was there sufficient evidence of knowledge by defendant of the falsities as to serve as a basis for the application of waiver? The question cannot be resolved at this stage of the case. Sufficiency of knowledge or possession of information imposing a duty of further investigation, unless conclusively established by the evidence, presents a question for the trier of facts.").

Because the unresolved issues of fact permeate all of Plaintiff's claims, she has not met the burden of establishing that there are no genuine issues of material fact and is not entitled to summary judgment.

## II.     Defendant's Motion for Summary Judgment

Defendant argues first that it is entitled to summary judgment because the Plaintiff cannot establish the essential elements of her breach of contract claim. Defendant first argues that in relying on apparent authority of Marsh to bind MetLife, Plaintiff cannot prove the element of reliance. MetLife relies on *Bray v. Bayles*, 4 Kan. App. 2d 596, 609 P.2d 1146, *judgment aff'd in part, rev'd in part on other grounds by* 228 Kan. 481, 618 P.2d 807 (Kan. 1980), which explains that "[t]he doctrine of apparent or ostensible authority is predicated upon the theory of estoppel, and the two concepts, for all practical purposes, may be treated identically. . . . Plaintiffs' failure to show good faith reliance or any reliance at all on the alleged agency relationship removes the possibility of finding apparent authority." *See also Wilson v. Haun*, 97 Kan. 445, 155 P. 798 (1919) ("Apparent or ostensible agency is really agency by estoppel, and it is more strictly accurate to say that liability arises for the acts of such a so-called agent, not because there is any agency, but because the principal will not be permitted to deny it.").

9

Defendant is correct that these theories of apparent agency and equitable estoppel similarly require an element of reliance. *Dodson Intern. Parts, Inc. v. Altendorf*, 347 F.Supp.2d 997 (D. Kan. 2004). ("It is the burden of the defendants as the parties relying on the asserted agency relationship to prove its existence by a preponderance of evidence that is clear and satisfactory. As part of this burden, the defendants must show their *reliance* on the agent's apparent authority was *reasonable*." (Emphases added.)). The Court, however, does not find that these theories are always identical, particularly in this instance. *See, e.g.*, *Id.* (defining apparent agency, including reasonable reliance, but not mentioning estoppel); *Kansas City Heartland Const. Co. v. Maggie Jones Southport Cafe, Inc.*, 250 Kan. 32, 824 P.2d 926 (Kan. 1992) (noting that neither the theory of apparent agency nor equitable estoppel apply, giving separate definitions for each); *Estate of Pingree v. Triple T Foods, Inc.*, 430 F.Supp.2d 1226 (D. Kan. 2006) (defining apparent agency as "one who, with or without authority, reasonably appears to third persons to be authorized to act as the agent of another," without mentioning estoppel).

Normally, "equitable estoppel may be invoked to forestall forfeiture of insurance coverage *but it cannot be used to . . . create* coverage. . . . Equitable estoppel may only forestall forfeiture of a valid contract of insurance. If a policy lapses by its unambiguous terms, a court cannot reinstate it or create a new policy under the guise of estoppel." *Unruh v. Prudential Property and Cas. Ins. Co.*, 43 F.Supp.2d 1237 (D. Kan. 1999) (emphasis added) (discussing Kansas contract law). While a party cannot assert that an insurance contract is formed by equitable estoppel, a party can rely on apparent agency to establish that a contract was created through a third-party apparent agent of an insurer.

10

"[A]cts and contracts of the agent as are within the apparent scope of the authority conferred on him, although no actual authority . . . *to make such contracts* has been conferred, are also binding upon the principal." *Id.* (emphasis added) (quoting *Bucher & Willis Consulting Engineers, Planners and Architects v. Smith*, 7 Kan.App.2d 467, 469, 643 P.2d 1156 (1982)); *Service v. Pyramid Life Ins. Co.*, 201 Kan. 196, 440 P.2d 944 (Kan. 1968) ("'It is found to be generally true that general agents have authority *to make contracts* and issue policies. One who is apparently the general agent of an insurer may bind his company to a special risk, although his instructions deny him that authority, if that fact is unknown to the insured.' . . .A general insurance agent clothed with authority to *make contracts of insurance*, . . . stands in the place of the company to the assured. . . . [T]he company is bound by anything said or done by the general agent. . ." (emphasis added)) (quoting 29 Am. Jur., Insurance, §193).

As to the reasonable reliance element of the apparent agency, MetLife argues that this element cannot be proven because Mr. Mulholland also received the declination letter from MetLife and also because Plaintiff did not assert any reliance in its previous filings such as that Mr. Mulholland did not obtain another insurance policy. Plaintiff responded to Defendant's reliance argument by pointing to the uncontroverted facts that Mr. Mulholland both submitted a payment for the premium and did not submit any statement of dispute referenced in MetLife's March 7, 2006, letter. In other words, Mr. Mulholland forewent a potential remedy with MetLife based on Marsh's representations that the policy was already in effect. The Court finds that while this may not amount to as much reliance as if Plaintiff had shown that Mr. Mulholland turned down other life

11

insurance policies, it satisfies the reliance standard for this stage of the proceedings. The Court finds that whether Mr. Mulholland's reliance was reasonable is an issue of fact.

Because there is an issue of fact and MetLife is not entitled to summary judgment on Plaintiff's apparent agency theory of recovery, the Court will not address Defendant's other arguments as to Plaintiff's alleged inability to prove essential elements of waiver and ratification.

Summary judgment also is not appropriate based on MetLife's affirmative defense that Mr. Mulholland's misrepresentations about his diabetes and insulin treatments are grounds for rescission of the contract. *See, e.g.*, *Hutton-Ford v. Union Labor Life Ins. Co.*, Case No. 05-1212, 2006 WL 1764388, *4-5 (D. Kan. June 27, 2006). Plaintiff responds that MetLife waived its right to rescind. As discussed in the context of Plaintiff's Motion for Summary Judgment, there are factual questions regarding the relationship between Marsh and MetLife and also what MetLife knew and when that need to be resolved in order to determine if MetLife waived its right to rescind.

Just as Plaintiff's Motion was denied because there are issues of material fact, so too is Defendant's Motion for Summary Judgment.


**IT IS HEREBY ORDERED** that Plaintiff Ms. Mulholland's and Defendant MetLife's Motions for Summary Judgment (docs. # 17, 33) are both **DENIED**.

**IT IS SO ORDERED.**

Dated this 5th day of May, 2008.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
